IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DELBERT HEARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: **3:09-cv-00449-JPG-PMF** |
| | ) | |
| WEXFORD HEALTH SOURCES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are defendant Elyea's motion for summary judgment (Doc. 75) and defendant Feinerman, Shepard, and Wexford Health Sources' motion for summary judgment (Doc. 76). The plaintiff, Delbert Heard, has filed responses to the motions (Docs. 92, 94). For the following reasons, it is **RECOMMENDED** that defendant Elyea's motion for summary judgment (Doc. 75) be **DENIED**, and defendants Dr. Feinerman, Dr. Shepard, and Wexford Health Sources' motion for summary judgment (Doc. 76) be **GRANTED in part** and **DENIED in part**.

# FACTS

Interpreting the evidence in the record most favorably to the non-moving party, the Court summarizes the relevant facts as follows:

From 2006 to 2008, the plaintiff, Delbert Heard ("Heard"), was incarcerated with the Illinois Department of Corrections ("IDOC") at Menard Correctional Center ("Menard") in Menard, Illinois. During that time, Heard was inflicted with bilateral inguinal hernias. Heard continually complained to Menard prison officials that these hernias were causing him significant pain and suffering, as well as mobility restrictions affecting his daily living activities.

1

Prior to being transferred to Menard, Dr. Darbandi, a surgeon at Stateville Correctional Center, where Heard was previously incarcerated, noted the need for and sought approval for surgery to repair at least one of Heard's hernias.

After Heard was transferred to Menard in March of 2006, defendants Dr. Feinerman (medical director) and Dr. Shepard (staff physician) examined him on different occasions regarding his hernias. Both doctors were employed by Wexford Health Sources, Inc. ("Wexford"), which contracts with the IDOC to provide medical services to prisoners.[1] Dr. Feinerman and Dr. Shepard told Heard that the proper and standard treatment for his hernias would be surgical repair. However, they informed Heard that they were operating pursuant to Wexford's treatment policy for hernias, which only permits them to recommend surgery when the hernias become strangulated. Dr. Feinerman and Dr. Shepard refused Heard's requests to be transferred to surgeon for evaluation of the seriousness of his hernias and refused to prescribe treatment and medication for his pain.

After continuing to deal with his pain and lack of mobility for more than a year, on May 22, 2007, Heard reported feeling pain like never before. On this day, Heard saw Dr. Shepard, who finally recommended that Heard be sent to an emergency room for treatment of the hernias at Chester Memorial Hospital ("Chester"). After arriving at Chester, Heard was administered morphine for his pain while doctors attempted to reduce his hernias, and Heard's stomach was pumped by inserting a tube down his throat. Dr. Allan Liefer successfully performed the laparoscopic surgery at Chester that same day. After the surgery, Dr. Liefer indicated that the surgery should have been performed much sooner in order avoid the necessity for the type of

---

[1] Wexford is also a named defendant in this case. *See* Part IV, *infra*.
[2] For example, if the Court were to follow Elyea's reasoning, prison officials A and B could observe a prisoner in serious need of medical attention on January 1, 2010 and do nothing about it. Prison official A then retires one day later on January 2, 2010, and prison official B continues

surgery he had to perform due to the delay. Dr. Liefer noted that the surgery was much more difficult and Heard's recovery would be more difficult due to the amount of scar tissue that had developed because of the delay in repair.

## PROCEDURAL HISTORY

On May 19, 2009, Heard brought the instant lawsuit in the U.S. District Court for the Central District of Illinois pursuant to 42 U.S.C. § 1983 alleging that several prison officials and Wexford acted under color of state law to deprive him of his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. The case was then transferred to the Southern District of Illinois on June 12, 2009 by the Order of District Judge Harold A. Baker on June 12, 2009. In its initial screening Order, District Judge J. Phil Gilbert ordered that one count and one defendant be dismissed from this case. Doc. 9. On August 17, 2010, Heard filed an amended complaint that effectively dismissed two defendants from this case and added a new count of civil conspiracy. *See* Docs. 52-56. Finally, on January 10, 2011, the remaining defendants filed the instant motions for summary judgment. Docs. 75, 76.

## DISCUSSION

The Court will first summarize the applicable law in this case and will then turn its discussion to the merits of the instant motions for summary judgment.

### I. Applicable Law

#### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes*

*Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties" (*Anderson*, 477 U.S. at 247-48) or by "some metaphysical doubt as to the material facts" (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. Lastly, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

### B. <u>Eighth Amendment Inadequate Medical Care Standard</u>

In a case decided this year, *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011), the Seventh Circuit Court of Appeals succinctly summarized the applicable law of this Circuit with regard to Eighth Amendment claims for inadequate medical care as applied to prison medical professionals as follows:

> "As we recently have stated,
>
>> The Eighth Amendment's prohibition against cruel and unusual punishment, which embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," prohibits punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle [v. Gamble]*, 429 U.S. [97,] 102 [97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ] (quotation marks omitted). It thus requires that the government provide "medical care for those whom it is punishing by incarceration." *Id*. at 103 [97 S.Ct. 285]. The Eighth Amendment safeguards the prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." *Id*. Accordingly, "deliberate

4

indifference to serious medical needs" of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution. *Id.* at 104 [97 S.Ct. 285].

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (parallel citations omitted).

A successful deliberate indifference claim is comprised of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). First, an inmate must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when an inmate demonstrates that his medical need itself was sufficiently serious. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is considered sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Notably, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Second, an inmate must establish that prison officials acted with a " 'sufficiently culpable state of mind' " to support liability under § 1983. *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). Although negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care. *Walker*, 293 F.3d at 1037. "[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653.

Applying the above to prison medical professionals, we have stated that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (internal quotation marks omitted). "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (internal quotation marks omitted). The burden is high on a plaintiff making such a claim: "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). However, a successful plaintiff need not "show that he was literally ignored" in his demands for medical treatment, and a defendant's showing that a plaintiff received "some" treatment does not resolve the issue conclusively if the

5

treatment was "blatantly inappropriate." *Greeno*, 414 F.3d at 653–54 (emphasis in original) (internal quotation marks omitted). Finally, the Eighth Amendment "protects [an inmate] not only from deliberate indifference to his or her current serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to future health." *Board v. Farnham*, 394 F.3d 469, 479 (7th Cir. 2005) (emphasis in original)."

*Roe*, 631 F.3d at 856-58.

## II. Statute of Limitations Arguments

The remaining defendants in this case argue that the statute of limitations prevents Heard from bringing the instant action. "A Section 1983 action is subject to the statute of limitations governing personal injury claims in the state where the alleged injury occurred." *Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993)). The alleged injury in this case occurred in Illinois. "Illinois has a two-year statute of limitations for personal injury claims." *Kelly*, 4 F.3d at 511 (citing 735 ILCS § 5/13-202). Therefore, a two-year statute of limitations period applies to this case.

Heard filed this lawsuit on May 19, 2009. Defendant Elyea, who retired on May 1, 2007, argues that the statute of limitations began to run on May 2, 2007 because Elyea no longer had the power to do something about Heard's condition after that date. *See* Doc. 75 at 4. Defendants Dr. Shepard and Dr. Feinerman argue that the statute of limitations began to run on September 11, 2006 because this was the last day that they denied Heard surgery for his hernias. *See* Doc. 76 at 5. In opposition, Heard maintains that the statute of limitations began to run on May 22, 2007 because he had a continuing injury until the date of his surgery (May 22, 2007). *See* Doc. 92 at 3.

The parties are correct that there is a question of when the statute of limitations began to run (accrual) and not a question of whether the applicable statute of limitations period was

6

delayed in some manner after it began to run (tolling). "While state law determines the period of limitations, federal law determines when a Section 1983 claim accrues." *Sellars*, 80 F.3d at 245 (citing *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994)). A Seventh Circuit case decided in 2001, *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), is instructive in resolving the instant accrual dispute. That case clarified accrual principles, such as the doctrine of continuing violation as applied to Section 1983 claims for deliberate indifference to a serious medical need under the Eighth Amendment.

Under the doctrine of continuing violation, "[e]very day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. A series of wrongful acts creates a series of claims." *Id.* at 318. "A violation is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Id.* at 319. Thus, under the doctrine of continuing violation, "[d]eliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." *Jervis v. Mitcheff*, 258 Fed.Appx. 3, 5-6 (7th Cir. 2007) (citing *Heard v. Sheahan*, 253 F.3d at 318-19). In this case, treatment for Heard's condition in this case was finally provided on May 22, 2007. The statute of limitations began to run on that day, and Heard is permitted to bring each claim in this case that occurred from the time the continuing violation began (sometime after being transferred to Menard in 2006) until two years after the continuing violation ceased (May 22, 2009).

Defendant Elyea's argument relies on a single sentence of *Heard v. Sheahan*, which provides that in a suit alleging that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition, "[the] refusal continue[s] for as long as the defendants had the power to do something about his condition." *Heard v. Sheahan,* 253 F.3d at 318. Based on this, Elyea argues that because he retired on May 1, 2007, he no longer had the power to do something about Heard's condition after that date. However, Elyea misunderstands the single sentence that he relies on in *Heard v. Sheahan*. By stating that the refusal to provide treatment lasted as long as the defendants "had the power to do something" about the condition, the Seventh Circuit did not intend to create a new accrual doctrine that would permit prison officials to retire in order to prematurely cut off liability from lawsuits. Rather, when the language in question is read in context with the rest of the opinion, it is quite clear that the phrase "had the power to do something" means that a defendant may be subject to being sued for an untreated condition for two years after either the plaintiff's confinement ends or the plaintiff actually receives treatment. Until one of these types of events occur, the defendants maintain the power to do something. It would be unreasonable for the Court to hold that Heard was required file a separate lawsuit for defendant Elyea when Heard likely did not possess knowledge of Elyea's retirement date.[2] Under the continuing violation doctrine, it is not the defendant that has the power to determine when the statute of limitations begins to run against himself. Rather, the

---

[2] For example, if the Court were to follow Elyea's reasoning, prison officials A and B could observe a prisoner in serious need of medical attention on January 1, 2010 and do nothing about it. Prison official A then retires one day later on January 2, 2010, and prison official B continues to observe the serious medical need and ignore it until January 10, 2010. Under Elyea's reasoning, the prisoner would not only be required to learn of prison official A's retirement date (which is very unlikely), but in order to get both prison official A and B into the same lawsuit, the prisoner would have to sue both prison official A and B within two years of prison official A's retirement date (January 2, 2012) rather than within two years of the date in which the continuing violation actually ceased (January 10, 2012). This result is unreasonable and certainly not the result that the Seventh Circuit intended.

plaintiff has the power to file a lawsuit within two years of being released from prison or actually receiving treatment for the serious medical need. Elyea's argument ignores the underlying purpose of the continuing violation, which is to prevent the plaintiff from having to file multiple lawsuits. *See id*. at 319-20 ("Not only would it be unreasonable to require [a plaintiff], as a condition of preserving his right to have a full two years to sue in respect of the last day on which his request was ignored, to bring separate suits two years after each of the earlier days of deliberate indifference; but it would impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them"). Because this is the only argument in Elyea's motion for summary judgment, it is **RECOMMENDED** that the (Doc. 75) motion for summary judgment be **DENIED**.

Elyea is not alone in his misunderstanding of the continuing violation doctrine. Defendants Dr. Shepard and Dr. Feinerman also rely on selected sentences of *Heard v. Sheahan* and ignore the core reasoning of the remainder of the case. Dr. Shepard and Dr. Feinerman rely on *Heard v. Sheahan* to argue that, in cases where there was a delay in providing medical care, the statute of limitations accrues on the last day the treatment was delayed. According to Dr. Shepard and Dr. Feinerman, Heard's claim began accruing on September 11, 2006 because this was the last day that they denied him treatment. *See* Doc. 76 at 5. However, this argument completely ignores the doctrine of continuing violation. As the Court outlined *supra*, the Seventh Circuit has reasoned that "[e]very day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Id.* at 318. Following this principle, the last day Dr. Shepard and Dr. Feinerman denied treatment was May 22, 2007, and Heard timely filed this lawsuit within the applicable two-year statute of limitations period.

### III. Claims Against Defendants Dr. Shepard and Dr. Feinerman

Defendants Dr. Shepard and Dr. Feinerman argue that there is not a genuine issue of material fact for trial as to whether they were deliberately indifferent to Heard's serious medical needs. In response, Heard argues that there is evidence in the record that creates a genuine issue of material fact for trial as to whether Dr. Shepard and Dr. Feinerman were deliberately indifferent to his serious medical needs. *See* Doc. 94 at 4. After examining the evidence in the record most favorable to Heard, the Court concludes that a reasonable trier of fact could conclude that Dr. Shepard and Dr. Feinerman were subjectively aware of Heard's serious medical condition and either knowingly or recklessly disregarded it. *See, e.g., Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (identifying the complete question on the subjective element of a deliberate indifference claim in a motion for summary judgment). As noted in *Hayes*, "subjective awareness and deliberate indifference can normally be proved only with circumstantial evidence." *Id*.

Here, Heard would provide his own testimony that he suffered significant pain and suffering while imprisoned at Menard, and his condition severely limited his daily living activities. Heard would also offer testimony in the form of the statements made to him by Dr. Shepard and Dr. Feinerman that Heard's condition required surgery, but they could not recommend surgery due to Wexford's treatment policy for hernias.[3] Furthermore, Heard could offer the testimony of his treating physicians. In his deposition, Dr. Darbandi recognized that he identified the need for surgery and sought approval for surgery to repair at least one of Heard's hernias before Heard arrived at Menard. *See* Doc. 94-2 at 13. Dr. Liefer stated in his deposition that the scarring around Heard's hernias indicated that the hernias were likely causing symptoms

---

[3] At this stage in litigation, the Court may not evaluate the credibility of this evidence. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 999 (7th Cir. 2003).

that necessitated surgery weeks or months before he performed the surgery. *See* Doc. 94-1 at 17. Taken together, this evidence is sufficient to create a genuine issue of material fact for trial as to whether Dr. Shepard and Dr. Feinerman were deliberately indifferent to Heard's serious medical needs.

According to Dr. Shepard and Dr. Feinerman, Heard's complaints and requests for surgeries amounted to nothing more than a disagreement with the medical care provided. *See* Doc. 76 at 8. It is true that "[m]ere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). Furthermore, the burden is high for a plaintiff claiming that treatment decisions of a medical professional amounted to deliberate indifference to a serious medical need. *See, e.g., Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) ("A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment."). However, it is enough, at this stage in the litigation, for the non-moving party to a motion for summary judgment to demonstrate that there is a genuine issue of material fact for trial as to whether the defendants were subjectively aware of the plaintiff's serious medical condition and either knowingly or recklessly disregarded it. Here, Heard has come forth with evidence that a treating physician at a prior institution believed that at least one of the hernias required repair. Heard has introduced further evidence that Dr. Shepard and Dr. Feinerman also believed the hernias required repair, but they, instead, chose not to recommend

11

surgery due to Wexford's treatment policy for hernias. Furthermore, Heard's own testimony about his continual complaints to Dr. Shepard and Dr. Feinerman provide support for his claim. In sum, the persuasive evidence indicates that there is a triable issue as to whether Dr. Shepard and Dr. Feinerman were subjectively aware of Heard's medical condition and intentionally disregarded it.

Dr. Shepard and Dr. Feinerman next argue that Heard has not provided any verifying medical evidence that the alleged delay in treatment of the hernias caused the hernias to worsen. *See* Doc. 76 at 8. In *Knight v. Wiseman*, 590 F.3d 458 (7th Cir. 2009), the Seventh Circuit Court of Appeals upheld summary judgment in favor of the defendant correctional officers when a two and a half hour period of time elapsed between the time that the plaintiff injured his shoulder and he received medical treatment for the injury. *See id*. at 466. While recognizing that a "delay in the provision of medical treatment for painful conditions-even non-life-threatening conditions-can support a deliberate indifference claim so long as the medical condition is sufficiently serious or painful," the Seventh Circuit found in favor of the defendant correctional officers because the plaintiff failed to produce "verifying medical evidence that shows his condition worsened because of the delay." *See id*. (citations and internal quotations omitted). In this case, Heard has introduced the deposition of Dr. Liefer who described his notes from the day of Heard's surgery as follows:

> Q: … Why don't you tell me what you remember about the operation of Mr. Heard.
> …
> A: … He had a little bit of small intestine stuck on the hernia sac on both sides with a lot of fibrosis which would be a lot of scarring, which would be indicative of the process having gone on for at least weeks or months prior to this.
> Q: When you say process, what do you mean?
> A: The hernia. The hernias going in and out and causing symptoms. Fibrosis takes time. That's scarring and that takes time. So if he hadn't had any trouble at all until the day before, we wouldn't have seen that. We might have seen some

12

swelling, some inflammation, acute stuff, but not this more chronic that I described with the fibrosis. …

Doc. 94-1 at 17.

Thus, in contrast to *Knight*, Heard has come forward in this case with verifying medical evidence that his condition worsened because of the delay of treatment.

Two other Seventh Circuit Court of Appeals cases warrant discussion due to their similarity to this case. First, in *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), the Seventh Circuit upheld the decision of the District Court finding for a medical professional who prescribed non-surgical means to treat a prisoner's hernia. *See id*. at 1014. The Seventh Circuit ruled that the District Judge's finding of no deliberate indifference was not clearly erroneous because the record indicated that the doctor's decision was grounded in professional judgment, and there was not sufficient evidence to prove that IDOC had a cost-saving policy against operating on all reducible hernias whatever the amount the pain or difficulty they cause. *See id*. In this case, however, the Court has found that there is enough evidence in the record where a reasonable juror could find that Dr. Shepard and Dr. Feinerman, acting in accordance with Wexford's policy regarding treatment of hernias, were aware of a substantial risk of harm and knowingly or recklessly disregarded it.[4] Second, the Court finds *Greeno v. Daley* more instructive in resolving the instant question. In *Greeno*, the Seventh Circuit ruled that a jury could find deliberate indifference from defendant doctor's refusal over a two-year period to refer the plaintiff to a specialist or authorize an endoscopy for the plaintiff's ulcer. *See id*. at 655. In that case, the possibility of an ulcer was first noted a year and a half before the endoscopy was successfully performed, but the defendant doctors "doggedly persisted in a course of treatment

---

[4] In addition to the evidence already discussed, Heard has also produced Wexford's treatment policy for hernias. *See* Doc. 94-1 at 2-3.

13

known to be ineffective, behavior that we have recognized as a violation of the Eighth Amendment." *Id*. (citing *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990) (per curiam) (prisoner could prevail on Eighth Amendment claim with evidence that defendants "gave him a certain kind of treatment knowing that it was ineffective")). Here, as in *Greeno*, there was an indication that one of Heard's hernias required surgical repair long before surgery was ultimately successfully performed, making it all the more obvious that the medical professionals should have responded to Heard's complaints. *See, e.g., id*. (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir.2004) (Eighth Amendment violated when authorities expose inmates to " 'undue suffering' " by denying reasonable requests for medical treatment); *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir.1990) (Eighth Amendment claim stated with allegations of multiple instances when prison doctor "insisted on continuing courses of treatment that the doctor knew were painful [or] ineffective")).

## IV. Claims Against Defendant Wexford Health Services, Inc.

Next, defendant Wexford argues that it is entitled to judgment on Heard's independent civil conspiracy claim in his amendment complaint. *See* Doc. 76 at 9. In response, Heard concedes that he has no claim for conspiracy against Wexford. Doc. 94 at 23-24. Therefore, it is **RECOMMENDED** that judgment be entered in favor of Wexford on Heard's independent civil conspiracy claim (Count I of the amended complaint).

However, Heard does argue that there is a genuine issue of material fact for trial as to whether Wexord was deliberately indifferent to his serious medical needs. *See* Doc. 94 at 23. "A private corporation can be held liable under § 1983 for its employees' constitutional violations only if an official corporate policy caused the violation." *Williams v. Prison Health Services, Inc*., 167 Fed.Appx. 555, 558 (7th Cir. 2006) (citing *Woodward v. Correctional Med. Servs. of*

*Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)). Here, the Court has determined that there is an issue for trial as to whether Wexford's employees, Dr. Shepard and Dr. Fienerman, violated Heard's constitutional rights. *See* Part III, *supra*. Heard has provided evidence that Dr. Shepard and Dr. Feinerman would have recommended surgery *but for* Wexford's hernia treatment policy. Additionally, Heard has introduced the policy that those doctors were purportedly acting in accordance with when they opted not to recommend surgical repair of Heard's hernias. *See* Doc. 94-1 at 2-3. Construing this evidence most favorable for Heard, there is a genuine issue of material fact for trial as to whether Wexford was deliberately indifferent to Heard's serious medical needs.

## RECOMMENDATION

For the forgoing reasons, it is **RECOMMENDED** that defendant Elyea's motion for summary judgment (Doc. 75) be **DENIED**, and defendant Feinerman, Shepard, and Wexford Health Sources' motion for summary judgment (Doc. 76) be **GRANTED in part** and **DENIED in part**.[5]

It is further **RECOMMENDED** that judgment be entered in favor of defendant Wexford Health Sources, Inc. on the plaintiff's civil conspiracy claim (Count I of the amended complaint) at the conclusion of this case.

SO RECOMMENDED.

DATED: <u>June 28, 2011.</u>

*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court did not consider defendant Dr. Shepard and Dr. Feinerman's exhaustion of administrative remedies arguments because they were untimely filed and leave to file was not granted. *See* Docs. 34, 55 (setting and extending dispositive motions re: exhaustion of administrative remedies deadline to October 1, 2010).